☑ Original ☐

CLERK'S OFFICE
A TRUE COPY
Aug 01, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Johanna Grace's cell phone assigned (414) 507-2171; See Attachments | ) ) ) |

Case No.   23   MJ   129

**Matter No.: 2023R00184**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____8/14/2023_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____8/1/2023 at 11:31 AM_____

*William E. Duffin*
*Judge's signature*

City and state:   _____Milwaukee, WI_____      Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

*Person to be searched*

The person of Johanna Johnice Canei GRACE, born 07/01/1990, for the phone assigned cellular telephone call number (414) 507-2171 (the "Target Device"), with service provided by U.S. Cellular and subscribed to by GRACE's mother.



*Device to be searched*

The Target Device.

## ATTACHMENT B

### *Evidence to be seized*

1.     All records and information on the Target Device described in Attachment A that relate to violations of 18 U.S.C. §§ 371, 1512, and 1791 (the "SUBJECT OFFENSES") and involve Johanna GRACE since January 1, 2023, including:

      a.   Records and information relating to the SUBJECT OFFENSES;

      b.   Record and information concerning contraband being provided to federal inmates;

      c.   Records and information relating to communications with Michael Wright, Darron Jackson, and Bobbie Ray Knight, Jr.;

      d.   Records and information relating to pending criminal investigations;

      e.   Records and information relating to the dissemination of internal law enforcement materials or the obstruction of justice;

      f.   Records and information relating to the finances—including but not limited to expenditures, obligations, income, and any financial or monetary transfers—of Johanna Grace, Michael Wright, Darron Jackson, and Bobbie Ray Knight, Jr.;

      g.   Records and information relating to the identity or location of the suspects, associates, and co-conspirators.

2.     Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

2

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

During the execution of the search of the person described in Attachment A, law enforcement personnel are authorized to obtain from Johanna GRACE the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock the Target Device, to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, for the purpose of attempting to unlock the Target Device's security features in order to search the contents as authorized by this warrant.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical

3

experts. Pursuant to this warrant, the ATF or FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.



CLERK'S OFFICE
A TRUE COPY
Aug 01, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Johanna Grace's cell phone assigned (414) 507-2171; See Attachments

)
)
)
)
)
)

Case No.    23    MJ    129

**Matter No.: 2023R00184**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ 371; 1512 and 1791 | Conspiracy to commit offense or to defraud United States; tampering with a witness, victim, or an informant; and providing or possessing contraband in prison |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*dalton evertz*

*Applicant's signature*

SA Dalton R. Evertz, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone

_____    *(specify reliable electronic means)*.

Date: 8/1/2023

*William E. Duffin*

*Judge's signature*

City and state:  Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge

*Printed name and title.*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION**
**UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Dalton Evertz, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of Johanna Johnice Canei Grace ("GRACE"), as described in Attachment A, for an electronic device (the "Target Device") described in Attachments A and B. I further request that the contemplated search warrant authorize the search of the Target Device for evidence more fully described in Attachment B.

2.      I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") currently assigned to the Milwaukee Field Office. As such, I am an investigative or law enforcement agent of the United States authorized under Title 18, United States Code, Section 3051, that is, an officer of the United States who is empowered by law to conduct investigations, to make arrests, and to collect evidence for various violations of federal law. I have been employed as a Special Agent of the ATF since October 2018.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.      Based on my training and experience and the facts as set forth in this Affidavit, I submit that there is probable cause to believe that GRACE and other have committed violations of 18 U.S.C. §§ 371, 1512, and 1791 (the "SUBJECT OFFENSES") and that evidence of such crimes is likely to be found on the Target Device described in Attachment B. As a result, there is probable

cause to search GRACE's person, further described in Attachment A, for the Target Device described in Attachment B, and to further search the Target Device described in Attachment B for evidence of the SUBJECT OFFENSES.

## PROBABLE CAUSE

5.       The FBI is investigating allegations of misconduct, corruption, and obstruction by former Correctional Staff employed by the Waukesha County Sheriff's Office ("WCSO"), who used their positions to provide contraband to federal inmates at the Waukesha County Jail, a correctional facility located in the Eastern District of Wisconsin that maintains an agreement with United States Marshal Service to detain federal prisoners.

*The April 2023 Tip & Search*

6.       On April 13, 2023, a clerk at the Waukesha County Jail received a call from a female ("INDIVIDUAL-1") who advised that inmate MICHAEL WRIGHT, a federal inmate who has been in custody at the Waukesha County Jail since October 20, 2021 and is currently awaiting trial in a multi-defendant case (*See* 21-CR-204), was in possession of an Apple iPhone. INDIVIDUAL-1 further stated that the iPhone was given to Inmate WRIGHT by staff at the jail. It was determined that Inmate WRIGHT was housed in cell 709, located in Pod 7 at the Waukesha County Jail, and that a search would be conducted of Inmate WRIGHT's cell.

7.       Prior to the search of Inmate WRIGHT's cell, Waukesha County Jail Corrections Lieutenant Jack Daily re-contacted INDIVIDUAL-1 regarding the information she provided. INDIVIDUAL-1 advised the Corrections Lieutenant Daily that Inmate WRIGHT had been contacting her since March 20, 2023, by cellular telephone. INDIVIDUAL-1 advised that she

received calls from Inmate WRIGHT from two different telephone numbers, 262-301-0823 and 262-977-5633.

8.      During the search of Inmate WRIGHT's cell, which was conducted on April 13, 2023, a Waukesha County Corrections Officer located a pair of white headphones and a white charging cord for an Apple iPhone, hidden inside a fruit snack bag. Jail staff did not locate an Apple iPhone or any other cellular device in Inmate WRIGHT's cell. Inmate WRIGHT was questioned by jail staff about the phone charging cord and headphones and Inmate WRIGHT eventually admitted that a former Correctional Officer, identified as AMANDA DEBERRY, provided these items to him. Inmate WRIGHT stated that DEBERRY was supposed to bring him a phone but that she did not do so. Inmate WRIGHT further stated that DEBERRY may have gotten scared and did not follow through with bringing a phone into the jail.

*Follow-up Interview and Additional Information provided by INDIVIDUAL-1*

9.      On April 17, 2023, Waukesha County Sheriff's Department Detective Nathan Plennes re-contacted INDIVIDUAL-1. INDIVIDUAL-1 advised Detective Plennes that she and Inmate WRIGHT were in an "on again and off again" relationship and had been since Inmate WRIGHT was incarcerated. INDIVIDUAL-1 further advised that she had been purchasing ICare packages[1] for Inmate WRIGHT on a weekly basis up until approximately July 2022. In July 2022, INDIVIDUAL-1 attempted to purchase an ICare package for Inmate WRIGHT; however, the request was denied because Inmate WRIGHT had reached his allotted ICare limit for the week.

---

[1] ICare packages can contain hygiene items, food and other items available to inmates through commissary.  These packages are purchased for inmates by loved ones, friends, acquaintances or anyone who wishes to provide one of these packages for an inmate that is incarcerated at the Waukesha County Jail

INDIVIDUAL-1 questioned Inmate WRIGHT about this and inquired as to who was purchasing ICare packages for him. Inmate WRIGHT stated that a Corrections Officer had been purchasing ICare packages for him, that the Corrections Officer owed him, and that "she" (referring to the Corrections Officer) was taking care of him.

10.    INDIVIDUAL-1 further advised Detective Plennes that after the aforementioned ICare incident, Inmate WRIGHT stopped accepting INDIVIDUAL-1's visits. INDIVIDUAL-1 subsequently began receiving calls from other inmates who made statements to the effect of, "Mike said he loves you," and "misses you." These other inmates also told INDIVIDUAL-1 that there was "something going on in here, he (referring to Inmate WRIGHT) can't get on the phone right now." Upon Inmate WRIGHT's request, INDIVIDUAL-1 changed her telephone number, but INDIVIDUAL-1 felt that "she" (referring to the Corrections Officer) figured out INDIVIDUAL-1's new telephone number. INDIVIDUAL-1 told Detective Plennes that during one particular call with Inmate WRIGHT, Inmate WRIGHT admitted he was "dealing" with a Corrections Officer and "she" did not like him talking to INDIVIDUAL-1.

11.    INDIVIDUAL-1 further advised Detective Plennes that she subsequently called the Waukesha County Jail and advised a male supervisor that she believed Inmate WRIGHT was having a relationship with a Corrections Officer. INDIVIDUAL-1 stated she received a follow-up call from a female with the Waukesha County Jail named "Grace" or "Grayson," and the Waukesha County Sheriff's Department subsequently confirmed GRACE was the Correctional Officer INDIVIDUAL-1 spoke to. INDIVIDUAL-1 stated the conversation with GRACE was abnormal and further stated that she believed GRACE was simply trying to find out if Inmate WRIGHT was still communicating with INDIVIDUAL-1. GRACE informed INDIVIDUAL-1 that the Waukesha

County Jail looked into her complaint and spoke to Inmate WRIGHT. According to INDIVIDUAL-1, GRACE told INDIVIDUAL-1 that Inmate WRIGHT told her (GRACE) that INDIVIDUAL-1 was "just a mad girlfriend" and that Inmate WRIGHT did not want to be with INDIVIDUAL-1 anymore. INDIVIDUAL-1 told GRACE that she received a letter from Inmate WRIGHT stating that he has a "CO girlfriend" that was not letting Inmate WRIGHT talk to INDIVIDUAL-1 and also blocked INDIVIDUAL-1's telephone number. GRACE requested that INDIVIDUAL-1 email a copy of the letter to her and provided INDIVIDUAL-1 with a personal email address rather than a Waukesha County email address.

12.     INDIVIDUAL-1 further advised Detective Plennes that she spoke with Inmate WRIGHT after the aforementioned conversation with GRACE and advised Inmate WRIGHT that she spoke to GRACE. INDIVIDUAL-1 asked Inmate WRIGHT if GRACE was the Corrections Officer he was involved with, and Inmate WRIGHT confirmed that it was in fact GRACE.

13.     INDIVIDUAL-1 further advised Detective Plennes that beginning on March 17, 2023, she started receiving text messages from Inmate WRIGHT. INDIVIDUAL-1 did not believe it was Inmate WRIGHT at first, so she requested that Inmate WRIGHT initiate a FaceTime call. INDIVIDUAL-1 stated Inmate WRIGHT initiated a FaceTime call, which confirmed Inmate WRIGHT had a cellular telephone in his possession. INDIVIDUAL-1 expressed her displeasure that Inmate WRIGHT allowed someone to come between them, referring to GRACE. Inmate WRIGHT requested INDIVIDUAL-1 setup a visit with him at the Waukesha County Jail, which INDIVIDUAL-1 subsequently did. During the visit, Inmate WRIGHT told INDIVIDUAL-1 that "she" blocked INDIVIDUAL-1's telephone number so that Inmate WRIGHT could not contact INDIVIDUAL-1.

14.     INDIVIDUAL-1 further advised Detective Plennes that after she contacted the Waukesha County Jail on April 13, 2023, regarding the initial information associated with the cellular telephone in the Waukesha County Jail, she received a follow-up call from Corrections Lieutenant Daily. INDIVIDUAL-1 stated she provided Lieutenant Daily with screenshots from several of her and Inmate WRIGHT's FaceTime conversations while he was using a cellular telephone in the jail.

15.     INDIVIDUAL-1 further advised Detective Plennes that on April 15, 2023, she ran into Inmate WRIGHT's cousin, "Big Bub," who has been identified as DARRON JACKSON. INDIVIDUAL-1 stated JACKSON questioned her about her recent contact with the Waukesha County Jail. JACKSON then showed INDIVIDUAL-1 several text messages on his cellular telephone that contained pictures of a report containing all the information INDIVIDUAL-1 provided to the Waukesha County Jail on April 13, 2023, along with the screenshots of the FaceTime conversations between INDIVIDUAL-1 and Inmate WRIGHT that she provided to Lieutenant Daily[2]. JACKSON read the information aloud to INDIVIDUAL-1 and INDIVIDUAL-1 confirmed all the information that was read to her was exactly as she told it to the Waukesha County Jail. JACKSON further advised INDIVIDUAL-1 that the lady (GRACE) was "still working" and that "she" (GRACE) said they were on "her bumper".

---

[2] According to the Waukesha County Sheriff's Department, the report that is referred to here is an internal jail matter of record pertaining to the complaint INDIVIDUAL-1 called in to the Waukesha County Jail on April 13, 2023. GRACE authored the original report and Lieutenant Daily added additional information to the report after he spoke to INDIVIDUAL-1 on April 13, 2023. This report is emailed to all supervisors in the jail every time updated information is added. GRACE would have received this information and would have had access to the report anytime she accessed her county email.

16.     On April 24, 2023, Detective Plennes spoke with INDIVIDUAL-1 again. INDIVIDUAL-1 stated she ran into JACKSON at a Walmart located in Racine, WI over the weekend. JACKSON told INDIVIDUAL-1 that Inmate WRIGHT arranged for JACKSON to purchase the cellular telephone that WRIGHT had been using. JACKSON also told INDIVIDUAL-1 that he dropped the cellular telephone off with GRACE so GRACE could bring the cellular telephone into the jail for WRIGHT. INDIVIDUAL-1 further advised that JACKSON stated he received money from GRACE and used the money to purchase ICare packages for Inmate WRIGHT at GRACE's direction.

*Search of GRACE's cellular telephone*

17.     On April 18, 2023, following a non-custodial interview with GRACE, Detective Plennes seized GRACE's the cellular telephone GRACE was using at that time, which was assigned telephone number 414-817-4174. On May 9, 2023, Detective Plennes obtained a state of Wisconsin search warrant for the cellular telephone and a copy of the associated forensic download was subsequently provided to the FBI.

18.     A review of the forensic download revealed GRACE provided Inmate WRIGHT with cellular telephones on two separate occasions. The cellular telephones were assigned telephone numbers 262-301-0823 and 262-977-5633, consistent with the information provided by INDIVIDUAL-1 as the cellular telephone numbers that she communicated with WRIGHT on, as indicated above.

19.     According to information received by Verizon pursuant to a State of Wisconsin Warrant for Records, telephone number 262-301-0823 is a TracFone[3] that was activated on March 9, 2023.

20.     Based on a review of text messages contained in GRACE's cellular telephone pursuant to the State of Wisconsin search warrant, it is believed GRACE brought the device assigned telephone number 262-301-0823 into the secure confines of the Waukesha County Jail and provided it to Inmate WRIGHT on or about March 12, 2023. As further detailed below, the cellular telephone was provided to GRACE on March 11, 2023 by JACKSON, previously identified as WRIGHT's cousin.

21.     The following contains excerpts of text messages exchanged between GRACE and JACKSON between March 9, 2023 and March 12, 2023:

*March 9, 2023*
GRACE: "He want a phone"
JACKSON: "I knew he would"
GRACE: "Just find out how much it will cost for phone and service… He don't need a charger piece because he said when it go dead he gone have me charge it. They don't have outlets in their cell"

*March 11, 2023*
JACKSON: (screenshot of an individual holding an Apple iPhone with several blank fields required to "Complete your Apple ID")
GRACE: "2612 west Hadley st Milwaukee Wisconsin 53206 and put a random number"
JACKSON: "Was that yo address you sent me"
GRACE: "Yeah why"
JACKSON: "Cause I was just gone pull up and drop it off real quick I'm 10 mins away or you can come to Mayfair and get it"
GRACE: "I'm still in the tub.. you pull up and put it in the mailbox…"
JACKSON: "It's in there have somebody grab it cause somebody just seen me out it in there"

---

[3] A subsidiary of Verizon Communications, TracFone (TracFone Wireless, Inc.) is an American prepaid, no-contract mobile phone provider.

GRACE: "Okay I got you"

*March 12, 2023*
GRACE: "I never wrote his number down"
JACKSON: "I got it"
GRACE: "Ok imma see if he gone text me"
JACKSON: (sent contact card for "Michael Wright Fed Baby" with telephone number 262-301-0823 as Inmate WRIGHT's number)

22.     According to information received by Verizon pursuant to a State of Wisconsin Warrant for Records, telephone number 262-977-5633 is also a TracFone[3], activated on April 3, 2023.

23.     Based on a review of text messages contained in GRACE's cellular telephone pursuant to the state of Wisconsin search warrant, it is believed GRACE brought the device assigned telephone number 262-977-5633 into the secure confines of the Waukesha County Jail and provided it to Inmate WRIGHT on or about April 7, 2023. As further detailed below, the cellular telephone was provided to GRACE on April 6, 2023, by "Ray Ray," identified as BOBBIE RAY KING JR., a known associate of WRIGHT.

24.     The following contains excerpts of text messages exchanged between GRACE and KING JR. between April 1, 2023 and April 6, 2023:

*April 1, 2023*
GRACE: "Let me know when you ready to go get that phone so I can send you the rest of the money"

*April 3, 2023*
KING JR.: "262-977-5633… The new number… 160 in all"
GRACE: "Huh"
KING JR.: "I got the phone… That's the number"
GRACE: "You didn't set up yet? Do you got Zelle?"
KING JR.: "No I didn't do anything. They just quick set to activate it"
GRACE: "Ok cool I'll set it up"

*April 5, 2023*
KING JR.: "You can meet today"
GRACE: "I can meet you tomorrow and bring you the cash"

*April 6, 2023*
GRACE: "Can you still meet today"
KING JR.: "Yes"
GRACE: "Where and what time"
KING JR.: "Wherever you want and after 3"
GRACE: "Ok are you in Racine"
KING JR.: "Yes I am"
GRACE: "I'm in Milwaukee"
KING JR.: "I know lol"
GRACE: "You want to meet halfway way"
KING JR.: "Yea we can"
GRACE: "We can at ikea… You know where that is"
KING JR.: "Yes"
GRACE: "Ok just hit me up… Are you done yet"
KING JR.: "You ready"
GRACE: "I'm at the house right now making the kids something to eat"
KING JR.: "Drop lo (location)"
GRACE: "2612 W Hadley Street"
KING JR.: "On my way"
GRACE: "Text me when you outside"
KING JR.: "5 minutes"
GRACE: "Ok"
KING JR.: "I'm outside"

25.     Beginning on April 6, 2023, GRACE began exchanging text messages with telephone number 262-977-5633. Of note, GRACE saved telephone number 262-977-5633 in her cellular telephone under the contact "Husband." A review of the text messages GRACE exchanged with 262-977-5633 revealed Inmate WRIGHT to be the operator of the cellular telephone. The text messages between GRACE and Inmate WRIGHT contain multiple videos of GRACE masturbating, videos of Inmate WRIGHT masturbating, sexually explicit dialogue, discussion of their life together, and discussion about their respective families and children.

26.     The text messages exchanged between GRACE and Inmate WRIGHT also contain conversation regarding the cellular telephones GRACE provided to Inmate WRIGHT and the methods used to provide the cellular telephones to Inmate WRIGHT. The following contains excerpts of text messages exchanged between GRACE and Inmate WRIGHT on April 12, 2023:

> GRACE: "Y'all locking in a 7 pm"
> Inmate WRIGHT: "Why… Why"
> GRACE: "Because short staffed"
> GRACE: "Did you leave me the phone to take ??... Because I was Looking for it"
> Inmate WRIGHT: "Ok n I did the dummy also"
> GRACE: "No you did not"
> Inmate WRIGHT: "I did… I forgot it don't take long to charge left it on there too long"
> GRACE: "I was looking for the phone"
> Inmate WRIGHT: (two laughing emojis)
> GRACE: "What"
> Inmate WRIGHT: "U ain't say nothing… First Stall that's it… I love u call u when u leave… U not going to sleep"
> GRACE: "Why"
> Inmate WRIGHT: "Cause we gone talk n u gotta charge that one more time before you leave"
> GRACE: "I'll just charge both of them"

27.     In addition to providing Inmate WRIGHT with cellular telephones, a review of text messages contained in GRACE's cellular telephone pursuant to the state of Wisconsin search warrant revealed GRACE also provided Inmate WRIGHT with controlled substances. The following contains excerpts of text messages exchanged between GRACE and JACKSON on March 27, 2023:

> GRACE: "I bought him three bags of gummies with thc… Like nigga really got it made"
> JACKSON: "You gone give umm to him"
> GRACE: "He got it already… He don't need me anymore though… Liquor make me act like a nigga.. I shouldn't have gave him all the gummies lmao"
> GRACE: "You know Mike [WRIGHT] are [ate] five gummies yesterday"
> JACKSON: "yea he was high is fuck"

28.     As indicated above, on April 15, 2023, INDIVIDUAL-1 was confronted by JACKSON regarding the information she provided to the Waukesha County Jail on April 13, 2023. A review of text messages contained in GRACE's cellular telephone pursuant to the state of Wisconsin search warrant revealed GRACE disseminated portions of the internal jail report surrounding the initial complaint filed by INDIVIDUAL-1 to at least four members of the public, including JACKSON. The following contains excerpts of text messages exchanged between GRACE and JACKSON on April 14, 2023:

> JACKSON: "Yoo you had called me"
> GRACE: (Sent two screenshots of Lieutenant Daily's addendum to the report entitled "Wright Michael A -Contraband in Pod in pod 7" containing the information Lieutenant Daily obtained from INDIVIDUAL-1, as well as the screen shots INDIVIDUAL-1 provided of her FaceTime conversations with Inmate WRIGHT)
> JACKSON: "Damnn mannnn wtf she sent all that up there to you or someone else caught that"
> GRACE: "To another supervisor… There is a full investigation going on"
> JACKSON: "On who you"
> GRACE: "I'll be out of a job on Monday"

29.     Following the April 18, 2023, non-custodial interview with GRACE and seizure of GRACE's then cellular telephone, GRACE was formally terminated from her position later that evening.

30.     Based on my training and experience, I know that GRACE's relaying INDIVIDUAL-1's cooperation to JACKSON and others was both a flagrant violation of GRACE's duty and extremely dangerous. I also know, based on my training and experience, that citizens like INDIVIDUAL-1 who cooperate with law enforcement can face violent reprisals from associates of the persons against whom they cooperated.

*The Target Device*

31.     On or about April 22, 2023, GRACE obtained a new cellular telephone assigned telephone number 414-507-2171 (the "Target Device"). According to information received from U.S. Cellular pursuant to a subpoena, the Target Device is subscribed to by a PALMER GRACE, believed to be GRACE's mother, with a billing address of 2612 W. Hadley St., Milwaukee, WI 53206, which is a location GRACE has resided. U.S. Cellular identified the device as an Apple iPhone Pro Max with IMEI number 35211735387171.

32.     Based on information provided by the WCSO, Inmate WRIGHT began contacting the Target Device on April 22, 2023, using the Waukesha County Jail telephone system. Detectives with WCSO have listened to the telephone calls between Inmate WRIGHT and the Target Device and determined GRACE to be user of the Target Device. In one particular call on April 22, 2023, GRACE indicated to Inmate WRIGHT that the Target Device was her new telephone number. Inmate WRIGHT most recently contacted the Target Device on May 23, 2023.

*Reason to Believe the Target Device is on GRACE's Person*

33.     In my training and experience, I know people frequently keep their cellular telephone on or very near their person at nearly all times of the day. It is common practice for most people to rely heavily on the use of their cellular telephone for many aspects of their daily lives. Law enforcement also obtained authorization from The Honorable Nancy Joseph to obtain location data associated with the Target Device. *See* 23-MJ-973. This location data indicates that Target Device has most frequently been located in the Riverwest area of Milwaukee. Law enforcement's efforts to determine the location of the Target Device with more particularity are ongoing.

34.     There is also reason to believe that GRACE frequently uses the Target Device described in Attachment B. For example, on June 1, 2023, according to information received from U.S. Cellular pursuant to a subpoena, GRACE had approximately 55 incoming/outgoing calls, consistently throughout the day, between 1:30am CST and 11:05pm CST.

*Reason to Believe Target Device Will Contain Evidence of the Subject Offenses*

35.     Further, there is probable cause to believe that records of GRACE's commission of the SUBJECT OFFENSES will be found on the Target Device described in Attachment B.

36.     As previously indicated in this Affidavit, GRACE has used the Target Device to continue to communicate with Inmate WRIGHT, as recently as May 23, 2023. Given the nature of their relationship, as well as the previous topics of conversation between GRACE and Inmate WRIGHT when GRACE was employed by the WCSO, there is probable cause to believe similar topics of conversation will be contained on the Target Device.

37.     Additionally, according to information received from U.S. Cellular pursuant to a subpoena, GRACE has used the Target Device to continue to communicate with JACKSON. Between May 21, 2023, and May 26, 2023, GRACE exchanged at least five telephone calls with JACKSON using the Target Device. As with Inmate WRIGHT, given the previous topics of conversation between GRACE and JACKSON, there is probable cause to believe similar topics of conversation between GRACE and JACKSON will be contained on the Target Device.

## **TECHNICAL TERMS**

38.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

39. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I believe that the Target Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

41. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

43.   *Manner of execution.*  Because this warrant seeks permission to examine a device that will already in law enforcement's possession, the execution of the search of the cellular device does not involve the further physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of this portion of the warrant at any time in the day or night.

44.   I know from my training and experience, as well as publicly available materials, that encryption systems for mobile phones and other electronic devices are becoming ever more widespread. Such encryption systems protect the contents of these devices from unauthorized

access by users and render these contents unreadable to anyone who does not have the device's password. As device encryption becomes more commonplace, the encryption systems implemented by device manufacturers are becoming more robust, with few—if any—workarounds available to law enforcement investigators.

45.     I also know that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features, and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize. Therefore, I request that this warrant permit law enforcement agents to obtain from DEBERRY the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that GRACE's physical biometric characteristics will unlock the Target Device.

46.     If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

47.     If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the frontfacing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers (such as Apple's "Face ID") have different names but operate similarly to Trusted Face.

48.     If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft devices, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

49.     In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

50.     As discussed in this Affidavit, your Affiant has reason to believe that the Target Device is subject to search and seizure pursuant to the applied-for warrant. The passcode or password that would unlock the Target Device is currently not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the Target Device, making the use of biometric features necessary to the execution of the search authorized by this warrant.

51.     I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period. For example, certain Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint for 8 hours and the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time. Due to the foregoing, if law enforcement personnel encounter any device(s) that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to obtain from GRACE the display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any device(s), including to (1)

press or swipe the fingers (including thumbs) of the aforementioned person to the fingerprint scanner of the device(s); (2) hold the device(s) in front of the face of the aforementioned person to activate the facial recognition feature; and/or (3) hold the device(s) in front of the face of the aforementioned person to activate the iris recognition feature, for the purpose of attempting to unlock the device(s) in order to search the contents as authorized by this warrant.

## **CONCLUSION**

52.     I submit that this affidavit supports probable cause for a warrant to search GRACE's person, further described in Attachment A, for the Target Device described in Attachments A and B, and to further search the Target Device for evidence of the SUBJECT OFFENSES.

## **ATTACHMENT A**

*Person to be searched*

The person of Johanna Johnice Canei GRACE, born 07/01/1990, for the phone assigned cellular telephone call number (414) 507-2171 (the "Target Device"), with service provided by U.S. Cellular and subscribed to by GRACE's mother.



*Device to be searched*

The Target Device.

## **ATTACHMENT B**

*Evidence to be seized*

1.      All records and information on the Target Device described in Attachment A that relate to violations of 18 U.S.C. §§ 371, 1512, and 1791 (the "SUBJECT OFFENSES")  and involve Johanna GRACE since January 1, 2023, including:

a.   Records and information relating to the SUBJECT OFFENSES;

b.   Record and information concerning contraband being provided to federal inmates;

c.   Records and information relating to communications with Michael Wright, Darron Jackson, and Bobbie Ray Knight, Jr.;

d.   Records and information relating to pending criminal investigations;

e.   Records and information relating to the dissemination of internal law enforcement materials or the obstruction of justice;

f.   Records and information relating to the finances—including but not limited to expenditures, obligations, income, and any financial or monetary transfers—of Johanna Grace, Michael Wright, Darron Jackson, and Bobbie Ray Knight, Jr.;

g.   Records and information relating to the identity or location of the suspects, associates, and co-conspirators.

2.      Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

2

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

During the execution of the search of the person described in Attachment A, law enforcement personnel are authorized to obtain from Johanna GRACE the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock the Target Device, to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, for the purpose of attempting to unlock the Target Device's security features in order to search the contents as authorized by this warrant.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical

3

experts. Pursuant to this warrant, the ATF or FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.